**F I L E D**
CLERK, U.S. DISTRICT COURT

12/30/2025

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ RYO _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2025 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 2:25-cr-01032-MWF |
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 1959(a)(3): Violent Crimes in Aid of Racketeering Activity; 18 U.S.C. § 1201(a)(1), (c): Conspiracy to Commit Kidnapping and Kidnapping; 21 U.S.C. § 846: Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances; 18 U.S.C. § 371: Conspiracy to Engage in the Business of Dealing in Firearms Without a License; 18 U.S.C. § 922(a)(1)(A): Engaging in the Business of Dealing in Firearms Without a License; 18 U.S.C. § 922(g)(1): Felon in Possession of Firearms and Ammunition; 21 U.S.C. § 841(a)(1), (b)(1)(A), (b)(1)(B), (b)(1)(C): Distribution and Possession with Intent to Distribute Controlled Substances; 18 U.S.C. § 924(c)(1)(A)(i): Possession of Firearms in Furtherance of Drug Trafficking Crimes; 21 U.S.C. § 860: Distribution of Controlled Substances Near Schools; 18 U.S.C. § 922(o)(1): Possession of a Machinegun; 18 U.S.C. § 933(a)(1): Trafficking in Firearms; 26 U.S.C. § 5861(d): Possession of |
| VICTOR SANCHEZ, aka "Pollo," aka "Chicken," | |
| ISAIAH CASTRO, aka "Boy," | |
| LUCKY SANCHEZ, aka "Debo," | |
| ESTEBAN FAUSTO, aka "Fat Boy," | |
| ADRIAN LOPEZ, aka "Tapped In," aka "Monkey," | |
| DOMINIC ORNELAS, aka "Dom," aka "Lil Speedy," | |
| ISAAC ESTRADA-FROST, aka "Ghost," | |
| BRYAN GORDIAN-PADILLA, aka "Goon," | |
| ABEL DOMINGUEZ, | |
| LARRY CASTILLO, aka "Lil Dee," | |
| HEATHER COVARRUBIAS, aka "Snowwbella," aka "Snow Bella," | |
| HEATHER JOHNSON, | |
| OTAN MOTAMEDI, | |
| FERNANDO CARMONA, | |
| FRANCISCO RODRIGUEZ, | |

|  |  |  |
|---|---|---|
| 1 | aka "Franco,"<br>JOHN RODRIGUEZ, | Unregistered Short-Barreled<br>Rifles; 26 U.S.C. § 5861(i): |
| 2 | ERICA RODRIGUEZ,<br>SOO KANG, | Possession of Un-Serialized Short-<br>Barreled Rifle; 18 U.S.C. |
| 3 | aka "Easy,"<br>LORENZO MEJIA, | §§ 981(a)(1)(C), 924(d), 21 U.S.C.<br>§ 853, 26 U.S.C. §§ 5872, 7302, |
| 4 | SILBESTRE PONCE, | and 28 U.S.C. § 2461(c): Criminal<br>Forfeiture] |
| 5 | Defendants. |  |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

A.   BACKGROUND OF THE PUENTE-13 GANG

1.   The Puente-13 gang was a multigenerational Hispanic street gang founded in the early 1950s in La Puente, California, that operated in Los Angeles County and elsewhere.  Puente-13 was originally known as the "Bridgetown Gentlemen" or "Old Town Puente" and comprised Hispanic males who engaged in narcotics distribution and other street crimes, with members viewing themselves as La Puente's guardians against outside gangs.  Later, the gang became known simply as "Puente" or "Puente-13."  Over the years, it dramatically expanded its membership to approximately 600 individuals and expanded its territory into the neighboring Southern California unincorporated community of Hacienda Heights and cities of Walnut, Industry, Pomona, and West Covina.  During the time period charged in this Indictment, there were at least 14 subsets, or "cliques," of the Puente-13 gang.  Cliques were founded by members living in a particular geographical area and named accordingly.  For example, Happy Homes was founded by residents of Hacienda Heights; and cliques such as Ballista Street, Blackwood Street, Northam Street, and Dial

1  Avenue were founded by members residing in those respective streets

2  in La Puente.

3      2.    The Puente-13 gang was controlled by senior members of the

4  individual cliques who oversaw admission into the gang.  A new

5  initiate typically was admitted to Puente-13 only after the approval

6  of senior leaders and after submitting to a violent beating at the

7  hands of other members (commonly referred to as "getting jumped in").

8  Some individuals were allowed to bypass this initiation process and

9  were granted admission into Puente-13 based upon a senior leader's

10  authority or by earning significant drug sales commissions on behalf

11  of the gang (commonly referred to as being "walked in").  Those

12  individuals also claimed Puente-13 gang membership.

13      3.    Puente-13 gang members frequently identified each other

14  through hand gestures designating "P" for Puente and/or various

15  symbols of the members' respective cliques.  Members commonly wore

16  clothing depicting these same symbols.  For example, members often

17  wore baseball hats for the Philadelphia Phillies or Pittsburgh

18  Pirates, whose team insignia included a "P," for Puente, or baseball

19  hats for the Tampa Bay Rays, whose team insignia included a "TB," for

20  Tinflanes-Ballista, an alliance between Puente-13's Tinflanes clique

21  and Ballista Street clique.  Gang tattoos, monikers, slogans, and

22  spray-painted graffiti on street signs and walls were also commonly

23  used to identify Puente-13 gang members and territory controlled by

24  the gang.

25      4.    The Puente-13 gang, including its leaders, members, and

26  associates, constituted an "enterprise," as defined by Title 18,

27  United States Code, Section 1961(4), that is, a group of individuals

28  associated in fact that was engaged in, and the activities of which

3

affected, interstate and foreign commerce.  The Puente-13 gang constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

5.   The Puente-13 gang, through its members and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is, acts involving murder, chargeable under California Penal Code Sections 21a, 31, 182, 187, 189, and 664; acts involving dealing in a controlled substance, chargeable under California Health and Safety Code Sections 11351 and 11352; offenses involving dealing controlled substances in violation of Title 21, United States Code, Sections 841(a)(1) and 846; and offenses indictable under Title 18, United States Code, Section 933 (relating to firearms trafficking).

B.   THE MEXICAN MAFIA'S RELATIONSHIP WITH THE PUENTE-13 GANG

6.   At least one Puente-13 gang member was also a validated member of the "Mexican Mafia," also known as "La Eme."  He claimed as his territory, through the Mexican Mafia, a large portion of the Puente-13 gang territory and collected "taxes" -- that is, extortionate demands of a share of the proceeds of licit and illicit activities -- from those areas.  Mexican Mafia members and associates communicated orders and authorizations to Puente-13 gang leaders, members, and associates, and received information about the activities of the Puente-13 gang.  Additionally, since senior members controlling the Puente-13 gang were also members or associates of the Mexican Mafia, the number 13 (signifying M, the thirteenth letter of the alphabet, for the Mexican Mafia) was commonly used to demonstrate that affiliation and loyalty to the Mexican Mafia.

4

1      7.   The Mexican Mafia was a prison gang that originated within

2  the prison system in order to control and direct the activities of

3  Southern California Hispanic street gangs.  "Made" members of the

4  Mexican Mafia assumed authority for different regions in Southern

5  California.  Typically, a "made" member was a prison inmate who came

6  from the ranks of a local Hispanic street gang, including the Puente-

7  13 gang, and exercised control and direction over his territory both

8  from within prison and from outside prison following his release.

9  The Mexican Mafia leaders issued directions and orders, including

10  orders to kill rival gang members, which were referred to as "green

11  lights."  Those orders were to be executed by California street gang

12  members, including members of Puente-13, and were understood by

13  Puente-13 gang members as opportunities to gain elevated status

14  within the Puente-13 gang or potentially become a "made" member of

15  the Mexican Mafia.

16      8.   The Mexican Mafia established rules to govern acts of

17  violence committed by local Hispanic street gang members and

18  associates, including those of Puente-13.  The Mexican Mafia required

19  Puente-13 gang members and associates to adhere to protocols for the

20  conduct of violent attacks, narcotics trafficking, and murders,

21  including the issuance of "green light" authorizations for murder and

22  violence.  Failure to adhere to Mexican Mafia rules could lead to the

23  issuance of a "green light," directing an attack on the offending

24  member, or the requirement that money be paid.  "Green lights" were

25  also frequently issued in retaliation for perceived "disrespect" to a

26  Mexican Mafia leader, to punish the unauthorized collection of "tax"

27  payments in a neighborhood controlled by the Puente-13 gang, or to

28  sanction individuals who traffic in narcotics without the gang's

1   authorization or without paying the required tax to Puente-13 and the

2   Mexican Mafia.

3       9.    Mexican Mafia and Puente-13 gang members and associates

4   regularly exploited prison visits, telephone calls, policies

5   concerning letter-communications with attorneys, and prison financial

6   accounts to generate income from narcotics trafficking and other

7   crimes of the Puente-13 gang, to promote the Puente-13 gang, and to

8   direct the operation of the Puente-13 gang from within prison.

9   Mexican Mafia leaders also required regular payments from Puente-13

10  members and associates who were incarcerated.

11      10.   Mexican Mafia members collected "taxes" from the members

12  and associates of Southern California street gangs, including Puente-

13  13, in the form of a share of the proceeds from the gangs' drug sales

14  and violent conduct.   Puente-13 gang leaders, in turn, extorted money

15  from their subordinates, local drug traffickers, and members of other

16  gangs.   A portion of the "taxes" collected by the Puente-13 gang

17  leaders was then paid to Mexican Mafia leaders who were incarcerated.

18  C.  PURPOSES OF THE PUENTE-13 GANG

19      11.   The purposes of the Puente-13 gang included, but were not

20  limited to, the following:

21          a.   Enriching members and associates of the Puente-13 gang

22  through, among other things, the control of and participation in the

23  distribution of narcotics in the territory controlled by the Puente-

24  13 gang;

25          b.   Maintaining the control and authority of the Puente-13

26  gang over the neighborhoods it controls, often through threats and

27  acts of violence;

28

6

            c.    Preserving, protecting, and expanding the power of the Puente-13 gang through the use of intimidation, violence, threats of violence, assault, and murder;

            d.    Promoting and enhancing the authority of Puente-13 gang members and associates;

            e.    Exposing and punishing Puente-13 gang members and associates, as well as those living within Puente-13 territory, who cooperate with law enforcement; and

            f.    Providing protection to Puente-13 gang members and associates from physical assaults and excessive extortion within the prison system.

D.   MEANS AND METHODS OF THE PUENTE-13 GANG

      12.  The means and methods by which the members and associates of the Puente-13 gang conducted and participated in the conduct of the affairs of the Puente-13 gang included, but were not limited to, the following:

            a.    Members and associates of the Puente-13 gang engaged in the trafficking of controlled substances and firearms as a means to generate income;

            b.    Members and associates of the Puente-13 gang promoted a climate of fear through acts of violence and threats to commit acts of violence; and

            c.    Members and associates of the Puente-13 gang committed, attempted to commit, conspired to commit, and threatened to commit acts of violence, including assault and murder, to preserve, protect, and expand the Puente-13 gang's operations.

E.    THE DEFENDANTS

    13.    Defendants VICTOR SANCHEZ, also known as ("aka") "Pollo" and "Chicken," ISAIAH CASTRO, aka "Boy," LUCKY SANCHEZ, aka "Debo," ESTEBAN FAUSTO, aka "Fat Boy," ADRIAN LOPEZ, aka "Tapped In" and "Monkey," DOMINIC ORNELAS, aka "Dom" and "Lil Speedy," ISAAC ESTRADA-FROST, aka "Ghost," BRYAN GORDIAN-PADILLA, aka "Goon," ABEL DOMINGUEZ, LARRY CASTILLO, aka "Lil Dee," HEATHER COVARRUBIAS, aka "Snowbella," HEATHER JOHNSON, OTAN MOTAMEDI, FERNANDO CARMONA, FRANCISCO RODRIGUEZ, aka "Franco," JOHN RODRIGUEZ, ERICA RODRIGUEZ, SOO KANG, aka "Easy," LORENZO MEJIA, and SILBESTRE PONCE, and others known and unknown to the Grand Jury, were members and associates of the Puente-13 gang that engaged in, among other things, acts involving assault, the distribution of controlled substances, and the sale of firearms.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                              COUNT ONE

                  [18 U.S.C. §§ 1959(a)(3), 2(a)]

                   [DEFENDANTS ORNELAS and LOPEZ]

     14.  The Grand Jury realleges paragraphs 1 through 4 and 6
through 13 of this Indictment here.

     15.  At all times relevant to this Indictment, Puente-13,
through its members and associates, engaged in racketeering activity
as defined in Title 18, United States Code, Sections 1959(b)(1) and
1961(1), namely acts involving murder and dealing in a controlled
substance chargeable under the laws of the state of California, and
offenses involving trafficking in controlled substances in violation
of Title 21, United States Code, Sections 841(a)(1) and 846.

     16.  On or about December 18, 2022, in Los Angeles County,
within the Central District of California, defendants ORNELAS and
LOPEZ, and others known and unknown to the Grand Jury, each aiding
and abetting the others, for the purpose of maintaining and
increasing position in the Puente-13 gang, an enterprise engaged in
racketeering activity, unlawfully and knowingly assaulted victims
with a dangerous weapon, in violation of California Penal Code
Sections 245(a)(2) and 31.

COUNT TWO

[18 U.S.C. §§ 1959(a)(3), 2(a)]

[DEFENDANT ESTRADA-FROST]

17.  The Grand Jury realleges paragraphs 1 through 4 and 6 through 13 of this Indictment here.

18.  At all times relevant to this Indictment, Puente-13, through its members and associates, engaged in racketeering activity as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely acts involving murder and dealing in a controlled substance chargeable under the laws of the state of California, offenses involving trafficking in controlled substances in violation of Title 21, United States Code, Sections 841(a)(1) and 846, and offenses indictable under Title 18, United States Code, Section 933 (relating to firearms trafficking).

19.  On or about May 2, 2025, in Los Angeles County, within the Central District of California, defendant ESTRADA-FROST, and others known and unknown to the Grand Jury, each aiding and abetting the others, for the purpose of maintaining and increasing position in the Puente-13 gang, an enterprise engaged in racketeering activity, unlawfully and knowingly assaulted Victim R.C. with a dangerous weapon, in violation of California Penal Code Sections 245(a)(2) and 31.

COUNT THREE

[18 U.S.C. § 1201(c)]

[DEFENDANTS LOPEZ, CASTILLO, COVARRUBIAS, and JOHNSON]

20.   The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

A.   OBJECT OF THE CONSPIRACY

21.   Beginning no later than on or about July 19, 2023, and continuing until on or about July 20, 2023, in Los Angeles and San Bernardino Counties, within the Central District of California, and elsewhere, defendants LOPEZ, CASTILLO, COVARRUBIAS, and JOHNSON, and others known and unknown to the Grand Jury, knowingly conspired with each other to unlawfully seize, confine, inveigle, decoy, kidnap, abduct, and carry away and hold Victims A.A. and A.C. for any reason, and, in committing and in furtherance of the commission of the offense, to use means, facilities, and instrumentalities of interstate and foreign commerce, namely, cellular telephones, the Internet, and motor vehicles, in violation of Title 18, United States Code, Section 1201(a)(1).

B.   MANNER AND MEANS OF THE CONSPIRACY

22.   The object of the conspiracy was to be accomplished, in substance, as follows:

a.   Defendant LOPEZ would call Victim A.A. to lure Victims A.A. and A.C. to defendant LOPEZ's residence so that the victims could be kidnapped.

b.   Members of the conspiracy would use physical force and violence, including striking Victim A.A., to kidnap him and Victim A.C.

c.    While at defendant LOPEZ's residence, members of the conspiracy would possess firearms and ammunition, strike Victim A.A., and interrogate Victim A.A. to obtain information regarding allegedly missing property.

d.    Defendants COVARRUBIAS and JOHNSON would question Victim A.C. outside of defendant LOPEZ's residence, and defendant CASTILLO would threaten Victim A.C. that the more Victim A.C. lied, the more Victim A.A. would be beaten inside defendant LOPEZ's residence.

e.    Defendants COVARRUBIAS and JOHNSON would transport Victim A.C. to multiple residences in Los Angeles County in search of allegedly missing property.

f.    Defendants LOPEZ and CASTILLO and a co-conspirator ("CC-1") would transport Victim A.A. to a residence in Diamond Bar, California, in search of allegedly missing property.

g.    Defendants LOPEZ, CASTILLO, COVARRUBIAS, and JOHNSON would use cellular telephones and the Internet to communicate regarding the kidnapping of Victims A.A. and A.C.

C.    <u>OVERT ACTS</u>

23.    On or about the following dates, in furtherance of the conspiracy and to accomplish its object, defendants LOPEZ, CASTILLO, COVARRUBIAS, and JOHNSON, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

<u>Overt Act No. 1:</u>    On July 19, 2023, via Instagram, CC-1 messaged an individual stating that CC-1 was at defendant LOPEZ's

residence; the individual responded that he would obtain ammunition
for CC-1; and CC-1 stated that he possessed a 9mm handgun.

Overt Act No. 2:    On July 19, 2023, via Instagram, defendant
LOPEZ messaged defendant JOHNSON, stating: "Hey can you tell
[defendant CASTILLO] to call me I really need his help with something
today I think I know who got my stuff."

Overt Act No. 3:    On July 20, 2023, defendant LOPEZ sent a
text message to Victim A.A., telling Victim A.A. to go to defendant
LOPEZ's residence in San Bernardino, California.

Overt Act No. 4:    On July 20, 2023, defendant LOPEZ met Victim
A.A. outside of defendant LOPEZ's residence while Victim A.C. waited
in the victims' vehicle.

Overt Act No. 5:    On July 20, 2023, inside defendant LOPEZ's
residence, defendants LOPEZ and CASTILLO and a co-conspirator ("CC-
2") surrounded Victim A.A., while defendants COVARRUBIAS and JOHNSON
stood nearby.

Overt Act No. 6:    On July 20, 2023, while questioning Victim
A.A. about missing jewelry, defendants LOPEZ and CASTILLO and CC-2
attacked Victim A.A with a metal pole.

Overt Act No. 7:    On July 20, 2023, defendants COVARRUBIAS and
JOHNSON went outside defendant LOPEZ's residence, approached Victim
A.C., and questioned Victim A.C. about the allegedly missing jewelry.

Overt Act No. 8:    On July 20, 2023, defendant CASTILLO went
outside defendant LOPEZ's residence and told Victim A.C. that the
more Victim A.C. lied, the more Victim A.A. would be beaten inside
defendant LOPEZ's residence.

Overt Act No. 9:    On July 20, 2023, defendants COVARRUBIAS and
JOHNSON entered Victim A.C.'s vehicle, and defendant COVARRUBIAS

drove Victim A.C. to the home of Victims A.C. and A.A. to look for
the allegedly missing jewelry.

Overt Act No. 10:    On July 20, 2023, defendants COVARRUBIAS and
JOHNSON forced Victim A.C. to allow them to enter the home of Victims
A.C. and A.A. in El Monte, California.

Overt Act No. 11:    On July 20, 2023, defendants COVARRUBIAS and
JOHNSON searched the home of Victims A.A. and A.C. and took multiple
photographs before leaving.

Overt Act No. 12:    On July 20, 2023, defendants COVARRUBIAS and
JOHNSON directed Victim A.C. to get back into the vehicle of Victims
A.C. and A.A., and then drove Victim A.C. to the residence of Victim
A.A.'s sister ("B.A.") in the La Puente/West Covina, California area.

Overt Act No. 13:    On July 20, 2023, defendant COVARRUBIAS
questioned B.A. regarding the whereabouts of the allegedly missing
jewelry.

Overt Act No. 14:    On July 20, 2023, defendants COVARRUBIAS and
JOHNSON drove Victim A.C. back to defendant LOPEZ's residence where
co-conspirators were still holding and beating Victim A.A.

Overt Act No. 15:    On July 20, 2023, defendant COVARRUBIAS beat
Victim A.A. with a metal object while Victim A.C. watched.

Overt Act No. 16:    On July 20, 2023, defendant COVARRUBIAS told
Victim A.C., "I would have blown his head off already" and "I would
have had him dead already," referring to Victim A.A.

Overt Act No. 17:    On July 20, 2023, while CC-1 held a firearm,
the co-conspirators told Victim A.A. that Victim A.A. could not
leave.

Overt Act No. 18:    On July 20, 2023, defendant CASTILLO told
Victim A.A. that Victim A.A. would be tortured and killed.

14

<u>Overt Act No. 19:</u>    On July 20, 2023, defendants LOPEZ and CASTILLO and CC-1 directed Victim A.A. to get into defendant COVARRUBIAS's car and drove Victim A.A. to a residence in Diamond Bar to search for the allegedly missing jewelry.

<u>Overt Act No. 20:</u>    On July 20, 2023, upon arriving at the residence in Diamond Bar, defendants LOPEZ and CASTILLO, CC-1, and two other individuals attacked Victim A.A.

15

COUNT FOUR

[18 U.S.C. §§ 1201(a)(1), 2(a)]

[DEFENDANTS LOPEZ, CASTILLO, COVARRUBIAS, and JOHNSON]

24.  The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

25.  Between on or about July 20, 2023, and on or about July 21, 2023, in Los Angeles and San Bernardino Counties, within the Central District of California, and elsewhere, defendants LOPEZ, CASTILLO, COVARRUBIAS, and JOHNSON, and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly and unlawfully seized, confined, inveigled, decoyed, kidnapped, abducted, and carried away and held Victims A.A and A.C. for any reason, using means, facilities, and instrumentalities of interstate and foreign commerce, namely, cellular telephones, the Internet, and motor vehicles, in committing and in furtherance of the commission of the offense.

                              COUNT FIVE

                           [21 U.S.C. § 846]

[DEFENDANTS V. SANCHEZ, CASTRO, L. SANCHEZ, FAUSTO, LOPEZ, DOMINGUEZ,
                    MOTAMEDI, F. RODRIGUEZ, and KANG]

     26.  The Grand Jury realleges paragraphs 1 through 13 of this
Indictment here.

A.   OBJECTS OF THE CONSPIRACY

     27.  Beginning no later than on or about March 14, 2023, and
continuing to on or about December 17, 2025, in Los Angeles, San
Bernardino, and Orange Counties, within the Central District of
California, and elsewhere, defendants V. SANCHEZ, CASTRO, L. SANCHEZ,
FAUSTO, LOPEZ, DOMINGUEZ, MOTAMEDI, F. RODRIGUEZ, and KANG conspired
with each other and others known and unknown to the Grand Jury to
knowingly and intentionally distribute and possess with intent to
distribute the following:

          a.   At least 50 grams of methamphetamine, a Schedule II
controlled substance, in violation of Title 21, United States Code,
Section 841(a)(1), (b)(1)(A)(viii);

          b.   At least 100 grams of a mixture and substance
containing a detectable amount of carfentanil, an analogue of N-
phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"),
a Schedule II narcotic drug controlled substance, in violation of
Title 21, United States Code, Section 841(a)(1), (b)(1)(A)(vi);

          c.   At least 40 grams of a mixture and substance
containing a detectable amount of fentanyl, a Schedule II narcotic
drug controlled substance, in violation of Title 21, United States
Code, Section 841(a)(1), (b)(1)(B)(vi); and

        d.    Cocaine, a schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C).

B.    <u>MANNER AND MEANS OF THE CONSPIRACY</u>

        28.    The objects of the conspiracy were to be accomplished, in substance, as follows:

        a.    Defendants V. SANCHEZ, CASTRO, and LOPEZ would use social media to advertise the sale of controlled substances, including methamphetamine, fentanyl, carfentanil, and cocaine.

        b.    Defendants V. SANCHEZ and CASTRO would broker sales of methamphetamine, fentanyl, carfentanil, and cocaine between suppliers and customers.

        c.    Defendants V. SANCHEZ, CASTRO, L. SANCHEZ, FAUSTO, LOPEZ, DOMINGUEZ, MOTAMEDI, F. RODRIGUEZ, and KANG would meet with customers and sell methamphetamine, fentanyl, carfentanil, and cocaine.

C.    <u>OVERT ACTS</u>

        29.    In furtherance of the conspiracy and to accomplish its objects, on or about the following dates, defendants V. SANCHEZ, CASTRO, L. SANCHEZ, FAUSTO, LOPEZ, DOMINGUEZ, MOTAMEDI, F. RODRIGUEZ, and KANG, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

**<u>March 15, 2023: Sale of Cocaine</u>**

        <u>Overt Act No. 1:</u>    On March 14, 2023, via Instagram, defendant V. SANCHEZ contacted a person he believed was a drug customer, but who was in fact a confidential informant working for law enforcement

("CI-1"), and told CI-1, using coded language, that he wanted to sell CI-1 marijuana and cocaine.

Overt Act No. 2:    On March 15, 2023, defendant V. SANCHEZ instructed CI-1 to meet with defendant CASTRO at an agreed-upon location in Pomona, California.

Overt Act No. 3:    On March 15, 2023, defendant CASTRO met with CI-1 and sold CI-1 marijuana and approximately 2.47 grams of a mixture and substance containing a detectable amount of cocaine.

Overt Act No. 4:    On March 15, 2023, via Instagram, defendant V. SANCHEZ, using coded language, asked CI-1 if CI-1 had received cocaine during the transaction.

**March 22, 2023: Sale of Fentanyl and Methamphetamine**

Overt Act No. 5:    On March 22, 2023, defendant V. SANCHEZ advertised the sale of fentanyl on his Instagram account.

Overt Act No. 6:    On March 22, 2023, via Instagram, defendant V. SANCHEZ contacted a person he believed was a drug customer, but who was in fact a confidential informant working for law enforcement ("CI-2"), and told CI-2, using coded language, that he wanted to sell CI-2 fentanyl.

Overt Act No. 7:    On March 22, 2023, defendant V. SANCHEZ provided CI-2 with an address in Pomona to meet for the sale.

Overt Act No. 8:    On March 22, 2023, defendant FAUSTO met with CI-2 and sold CI-2 approximately 10.596 grams of a mixture and substance containing a detectable amount of fentanyl and 5.221 grams of methamphetamine.

Overt Act No. 9:    On March 22, 2023, during the meeting, defendant FAUSTO called defendant V. SANCHEZ, whom he referred to as "Pollo," and asked defendant V. SANCHEZ about the terms of the deal.

Overt Act No. 10:    On March 22, 2023, defendant V. SANCHEZ contacted CI-2 to confirm that the deal, as arranged, had taken place.

**April 5, 2023: Sale of Fentanyl and Methamphetamine**

Overt Act No. 11:    On March 29, 2023, via Instagram, defendant V. SANCHEZ contacted CI-2 and inquired whether CI-2 wanted to purchase anything from defendant V. SANCHEZ.

Overt Act No. 12:    On April 4, 2023, via Instagram and using coded language, defendant V. SANCHEZ agreed to sell CI-2 methamphetamine and fentanyl.

Overt Act No. 13:    On April 5, 2023, defendant V. SANCHEZ met with CI-2 and sold CI-2 approximately 441 grams of methamphetamine and 105.254 grams of a mixture and substance containing a detectable amount of fentanyl.

**April 5, 2023: Sale of Methamphetamine**

Overt Act No. 14:    On April 5, 2023, via Instagram, defendant V. SANCHEZ coordinated with CI-1 about the sale of methamphetamine.

Overt Act No. 15:    On April 5, 2023, via Instagram, defendant V. SANCHEZ told CI-1 to meet him at a location in Pomona to conduct the sale.

Overt Act No. 16:    On April 5, 2023, defendant V. SANCHEZ met with CI-1 and a co-conspirator ("CC-3") at a location in Pomona.

Overt Act No. 17:    On April 5, 2023, CC-3 provided CI-1 with approximately 113.4 grams of methamphetamine, and CI-1 paid defendant V. SANCHEZ for the methamphetamine.

**June 1, 2023: Sale of Fentanyl**

<u>Overt Act No. 18:</u>  On May 30, 2023, via Instagram, defendant V. SANCHEZ discussed the sale of fentanyl pills with CI-2.

<u>Overt Act No. 19:</u>  On June 1, 2023, via Instagram, defendant V. SANCHEZ informed CI-2 that he had the fentanyl ready for sale and instructed CI-2 to meet at defendant FAUSTO's home in Pomona, California.

<u>Overt Act No. 20:</u>  On June 1, 2023, in Pomona, California, defendant FAUSTO sold CI-2 approximately 53.13 grams of a mixture and substance containing a detectable amount of fentanyl.

**June 7, 2023: Sale of Cocaine**

<u>Overt Act No. 21:</u>  On June 7, 2023, via Instagram, defendant CASTRO discussed the sale of cocaine with CI-2.

<u>Overt Act No. 22:</u>  On June 7, 2023, defendant CASTRO coordinated the sale of cocaine to CI-2 through a co-conspirator ("CC-4").

<u>Overt Act No. 23:</u>  On June 7, 2023, CC-4 met with defendant CASTRO and CI-2 and sold CI-2 approximately 27.95 grams of a mixture and substance containing a detectable amount of cocaine.

**June 13, 2023: Sale of Cocaine**

<u>Overt Act No. 24:</u>  Between June 8, 2023, and June 13, 2023, defendant CASTRO coordinated the sale of firearms with CI-2.

<u>Overt Act No. 25:</u>  On June 13, 2023, in Pomona, California, defendant CASTRO met with CI-2 to sell CI-2 firearms.

<u>Overt Act No. 26:</u>  On June 13, 2023, while meeting with CI-2 to sell firearms, defendant CASTRO sold approximately 21.2 grams of a mixture and substance containing a detectable amount of cocaine to CI-2.

**June 28, 2023: Sale of Cocaine**

Overt Act No. 27:   On June 28, 2023, defendant CASTRO coordinated the sale of multiple firearms to CI-2 at various locations.

Overt Act No. 28:   On June 28, 2023, defendant CASTRO directed CI-2 to a residence on East Nanette Avenue in West Covina, California (the "East Nanette Residence").

Overt Act No. 29:   On June 28, 2023, while at the East Nanette Residence, defendant CASTRO met with CI-2 and defendant KANG.

Overt Act No. 30:   On June 28, 2023, at the East Nanette Residence, defendant KANG sold approximately 27.8 grams of a mixture and substance containing a detectable amount of cocaine to CI-2.

Overt Act No. 31:   On June 28, 2023, while leaving the East Nanette Residence, defendant CASTRO sold approximately 12.7 grams of a mixture and substance containing a detectable amount of cocaine to CI-2.

**August 23, 2023: Sale of Methamphetamine**

Overt Act No. 32:   Between August 17, 2023, and August 23, 2023, defendant FAUSTO discussed the sale of methamphetamine with CI-1 and agreed to meet CI-1 at a residence in Pomona, California on August 23, 2023, to conduct the sale.

Overt Act No. 33:   On August 23, 2023, defendant FAUSTO met with CI-1 in Pomona, California and sold approximately 55.6 grams of methamphetamine to CI-1.

**September 6, 2023: Sale of Cocaine**

Overt Act No. 34:    Between September 1, 2023, and September 6, 2023, defendant CASTRO coordinated the sale of methamphetamine with CI-2.

Overt Act No. 35:    On September 6, 2023, defendant CASTRO met with CI-2 and a person he believed was a drug customer, but who was in fact a confidential informant working for law enforcement ("CI-3"), in Irwindale, California.

Overt Act No. 36:    On September 6, 2023, during the meeting in Irwindale, California, defendant CASTRO sold approximately 5.3 grams of a mixture and substance containing a detectable amount of cocaine to CI-2.

**October 12, 2023: Sale of Methamphetamine**

Overt Act No. 37:    On October 10, 2023, via Instagram, defendant V. SANCHEZ exchanged direct messages and voice messages with CI-1 regarding the sale of methamphetamine to CI-1.

Overt Act No. 38:    On October 12, 2023, via Instagram, defendant V. SANCHEZ agreed to sell CI-1 one pound of methamphetamine.

Overt Act No. 39:    On October 12, 2023, via Instagram, defendant V. SANCHEZ provided CI-1 with an address for the methamphetamine transaction in Pomona, California.

Overt Act No. 40:    On October 12, 2023, defendant V. SANCHEZ met with CI-1 in Pomona, California and sold CI-1 approximately 420.4 grams of methamphetamine.

**December 6, 2023: Sale of Methamphetamine**

<u>Overt Act No. 41:</u>  On November 20, 2023, via text message, defendant CASTRO told CI-1 that he had one pound of methamphetamine for sale.

<u>Overt Act No. 42:</u>  On December 6, 2023, defendants CASTRO and DOMINGUEZ met with CI-1 in Pomona, California to sell CI-1 methamphetamine.

<u>Overt Act No. 43:</u>  On December 6, 2023, in Pomona, California, defendant DOMINGUEZ sold approximately 445.5 grams of methamphetamine to CI-1.

**January 11, 2024: Sale of Methamphetamine**

<u>Overt Act No. 44:</u>  On January 10, 2024, via text message, defendant V. SANCHEZ discussed the sale of methamphetamine with CI-1.

<u>Overt Act No. 45:</u>  On January 11, 2024, via text message, defendant V. SANCHEZ instructed CI-1 to meet at an agreed-upon location in Pomona, California.

<u>Overt Act No. 46:</u>  On January 11, 2024, defendants L. SANCHEZ and F. RODRIGUEZ met with CI-1 at the agreed-upon location and sold CI-1 approximately 450.4 grams of methamphetamine.

**February 13, 2024: Sale of Methamphetamine**

<u>Overt Act No. 47:</u>  On February 7, 2024, via text message and phone calls, defendant V. SANCHEZ discussed additional sales of methamphetamine with CI-1.

<u>Overt Act No. 48:</u>  Between February 7, 2024, and February 12, 2024, via text message, defendant V. SANCHEZ agreed to sell methamphetamine to CI-1.

<u>Overt Act No. 49:</u>  On February 13, 2024, defendant V. SANCHEZ coordinated the sale of methamphetamine to CI-1 at a location in Pomona, California.

Overt Act No. 50:   On February 13, 2024, at the Pomona location, defendant L. SANCHEZ sold CI-1 approximately 855.8 grams of methamphetamine.

**February 28, 2024: Sale of Methamphetamine**

Overt Act No. 51:   Between February 26, 2024, and February 27, 2024, via text message and phone calls, defendant V. SANCHEZ communicated with CI-1 regarding the sale of methamphetamine and agreed to sell methamphetamine to CI-1 on February 28, 2024.

Overt Act No. 52:   On February 28, 2024, defendant L. SANCHEZ met with CI-1 in Pomona, California to execute the sale.

Overt Act No. 53:   On February 28, 2024, in Pomona, California, defendant L. SANCHEZ placed approximately 431.1 grams of methamphetamine in CI-1's vehicle.

**April 10, 2024: Sale of Methamphetamine**

Overt Act No. 54:   On April 8, 2024, and April 9, 2024, via text message, defendant V. SANCHEZ discussed the sale of two pounds of methamphetamine with CI-1.

Overt Act No. 55:   On April 10, 2024, defendant V. SANCHEZ agreed to sell methamphetamine to CI-1 in a parking lot in West Covina, California.

Overt Act No. 56:   On April 10, 2024, defendant L. SANCHEZ met with CI-1 in West Covina, California to execute the sale.

Overt Act No. 57:   On April 10, 2024, in West Covina, California, defendant L. SANCHEZ entered CI-1's vehicle and provided CI-1 with approximately 439.4 grams of methamphetamine.

**September 16, 2024: Sale of Carfentanil**

Overt Act No. 58:   On September 15, 2024, and September 16, 2024, via Instagram, defendant V. SANCHEZ discussed the sale of

fentanyl with a person he believed was a drug customer, but who was in fact a confidential informant working for law enforcement ("CI-4").

Overt Act No. 59:  On September 16, 2024, via Instagram, defendant V. SANCHEZ agreed to sell 1,000 fentanyl pills to CI-4.

Overt Act No. 60:  On September 16, 2024, defendant MOTAMEDI met with CI-4 and an undercover law enforcement officer, whom defendant MOTAMEDI believed to be a drug purchaser ("UC-1"), in Santa Ana, California.

Overt Act No. 61:  On September 16, 2024, in Santa Ana, California, defendant MOTAMEDI sold 1,000 counterfeit M30 pills, containing approximately 106.07 grams of a mixture and substance containing a detectable amount of carfentanil, to UC-1.

**December 10, 2024: Sale of Fentanyl**

Overt Act No. 62:  On December 9, 2024, defendant V. SANCHEZ agreed to sell CI-4 1,000 fentanyl pills on the following day.

Overt Act No. 63:  On December 10, 2024, via text message, defendant V. SANCHEZ contacted CI-4 to inform CI-4 that he only had 500 fentanyl pills.

Overt Act No. 64:  On December 10, 2024, defendant V. SANCHEZ met with CI-4 in Pomona, California and sold CI-4 approximately 50.6 grams of a mixture and substance containing a detectable amount of fentanyl.

**January 2, 2025: Sale of Fentanyl**

Overt Act No. 65:  On December 30, 2024, via text message, defendant V. SANCHEZ discussed the sale of fentanyl pills with CI-4.

Overt Act No. 66:  On January 2, 2025, defendant V. SANCHEZ coordinated the sale of fentanyl to CI-4 at a location in Pomona.

Overt Act No. 67:   On January 2, 2025, defendant V. SANCHEZ told CI-4 that a third party would be present at the meeting.

Overt Act No. 68:   On January 3, 2025, defendant FAUSTO met with CI-4 in Pomona, California and sold CI-4 approximately 98.98 grams of a mixture and substance containing a detectable amount of fentanyl.

**April 17, 2025: Sale of Fentanyl**

Overt Act No. 69:   On April 14, 2025, via Instagram, defendant LOPEZ discussed the sale of fentanyl with CI-3.

Overt Act No. 70:   On April 14, 2025, via Instagram, defendant LOPEZ told CI-3, "There's 2 kinds rn . . . .  There is fire ones and alright ones."

Overt Act No. 71:   On April 16, 2025, via Instagram, defendant LOPEZ told CI-3 that he was still waiting for fentanyl to sell to CI-3.

Overt Act No. 72:   On April 17, 2025, defendant LOPEZ met with CI-3 at a location in Diamond Bar, California.

Overt Act No. 73:   On April 17, 2025, in Diamond Bar, California, defendant LOPEZ sold CI-3 approximately 99.7 grams of a mixture and substance containing a detectable amount of fentanyl.

COUNT SIX

[18 U.S.C. § 371]

[DEFENDANTS V. SANCHEZ, CASTRO, L. SANCHEZ, FAUSTO, GORDIAN-PADILLA, DOMINGUEZ, and CARMONA]

30.  The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

A.  INTRODUCTORY ALLEGATION

31.  At times relevant to this Indictment, defendants V. SANCHEZ, CASTRO, L. SANCHEZ, FAUSTO, GORDIAN-PADILLA, DOMINGUEZ, and CARMONA did not have a federal firearms license issued by the United States Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and thus were not licensed to import, manufacture, or deal in firearms.

B.  OBJECT OF THE CONSPIRACY

32.  Beginning no later than on or about March 22, 2023, and continuing to at least on or about November 4, 2024, in Los Angeles County, within the Central District of California, and elsewhere, defendants V. SANCHEZ, CASTRO, L. SANCHEZ, FAUSTO, GORDIAN-PADILLA, DOMINGUEZ, and CARMONA conspired with each other and others known and unknown to the Grand Jury to engage in the business of dealing in firearms without a license, in violation of Title 18, United States Code, Section 922(a)(1)(A).

C.  MANNER AND MEANS OF THE CONSPIRACY

33.  The object of the conspiracy was to be accomplished, in substance, as follows:

          a.  Defendants V. SANCHEZ and CASTRO would use social media to advertise the sale of firearms.

b.    Defendants V. SANCHEZ and CASTRO would coordinate with customers to facilitate the sale of firearms.

c.    Defendants V. SANCHEZ, CASTRO, L. SANCHEZ, FAUSTO, GORDIAN-PADILLA, DOMINGUEZ, and CARMONA would sell, or assist with the sale of, firearms to customers.

D.    OVERT ACTS

34.    In furtherance of the conspiracy and to accomplish its object, on or about the following dates, defendants V. SANCHEZ, CASTRO, L. SANCHEZ, FAUSTO, GORDIAN-PADILLA, DOMINGUEZ, and CARMONA, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

**March 22, 2023: Sale of One Firearm**

Overt Act No. 1:    On March 22, 2023, via Instagram and using coded language, defendant V. SANCHEZ advertised the sale of a firearm.

Overt Act No. 2:    On March 22, 2023, defendant V. SANCHEZ told CI-2 to go to a residence in Pomona, California to conduct a firearm sale.

Overt Act No. 3:    On March 22, 2023, at the residence in Pomona, California, defendant FAUSTO met with CI-2 and sold one privately manufactured 9mm caliber firearm to CI-2.

**April 5, 2023: Sale of One Firearm**

Overt Act No. 4:    On April 5, 2023, via Instagram, defendant V. SANCHEZ told CI-1 about firearms that defendant V. SANCHEZ had for sale.

1        <u>Overt Act No. 5:</u>   On April 5, 2023, via Instagram, defendant
2    V. SANCHEZ arranged to meet with CI-1 to conduct a firearm sale in
3    Pomona, California.

4        <u>Overt Act No. 6:</u>   On April 5, 2023, defendant V. SANCHEZ met
5    with CI-1 in Pomona, California and sold one SMI-MA Kahr Arms, model
6    K40, .40 caliber pistol, bearing serial number DF4340.

7    **April 5, 2023: Another Sale of One Firearm**

8        <u>Overt Act No. 7:</u>   On March 29, 2023, via Instagram, defendant
9    V. SANCHEZ contacted CI-2 and inquired whether CI-2 wanted to
10   purchase anything from V. SANCHEZ.

11       <u>Overt Act No. 8:</u>   On March 31, 2023, via Instagram, defendant
12   V. SANCHEZ advertised the sale of a handgun.

13       <u>Overt Act No. 9:</u>   On April 5, 2023, via Instagram, defendant
14   V. SANCHEZ arranged for CI-2 to meet him at defendant FAUSTO's
15   residence in Pomona, California.

16       <u>Overt Act No. 10:</u>   On April 5, 2023, defendant V. SANCHEZ met
17   with CI-2 at defendant FAUSTO's residence and sold one privately
18   manufactured firearm to CI-2.

19   **June 7, 2023: Sale of One Firearm**

20       <u>Overt Act No. 11:</u>   On June 4, 2023, via Instagram, defendant
21   CASTRO advertised a firearm for sale.

22       <u>Overt Act No. 12:</u>   On June 7, 2023, via Instagram, defendant
23   CASTRO sent CI-2 an address in Azusa, California, to conduct the
24   firearm sale.

25       <u>Overt Act No. 13:</u>   On June 7, 2023, at the address in Azusa,
26   California, defendant CASTRO sold CI-2 one HS Produkt, Springfield
27   Armory, model XD-9, 9x19mm caliber pistol, bearing serial number
28   XD887601.

**June 13, 2023: Sale of One Short-Barreled Rifle and Three Other
Firearms**

Overt Act No. 14:    On June 8, 2023, via text message, defendant
CASTRO contacted CI-2 to advertise various firearms he had for sale.

Overt Act No. 15:    On June 13, 2023, defendant CASTRO contacted
CI-2 to meet at defendant FAUSTO's residence in Pomona, California.

Overt Act No. 16:    On June 13, 2023, after meeting CI-2 outside
of FAUSTO's residence, defendants CASTRO and L. SANCHEZ entered CI-
2's vehicle and traveled to a residence in Covina, California.

Overt Act No. 17:    On June 13, 2023, after arriving at the
residence in Covina, California, defendants CASTRO and L. SANCHEZ and
CI-2 met with defendants MEJIA and PONCE.

Overt Act No. 18:    On June 13, 2023, at the residence in
Covina, California, defendants MEJIA and PONCE showed CI-2 multiple
firearms for sale.

Overt Act No. 19:    On June 13, 2023, at the residence in
Covina, California, defendants MEJIA and PONCE sold to CI-2 one
A.C.P., Mitchell, model 9108 BL, 12-gauge shotgun, bearing serial
number 691801; one privately manufactured short-barreled rifle,
bearing no serial number (commonly referred to as a "ghost gun"); and
one LW Schneider Inc., Springfield Armory, model Saint, multi-caliber
rifle, bearing serial number ST166939.

Overt Act No. 20:    On June 13, 2023, in Pomona, California,
defendants CASTRO and L. SANCHEZ directed CI-2 to meet with a co-
conspirator.

Overt Act No. 21:    On June 13, 2023, in Pomona, California,
defendant CASTRO retrieved one Ruger, model AR-556, 5.56 caliber

rifle, bearing serial number 857-49363, from a co-conspirator's
vehicle and provided it to CI-2.

**June 28, 2023: Sale of Six Firearms**

Overt Act No. 22:  On June 16, 2023, via text message,
defendant CASTRO contacted CI-2 and advertised various firearms that
defendant CASTRO had for sale.

Overt Act No. 23:  On June 27, 2023, via Instagram, defendant
GORDIAN-PADILLA advertised a firearm for sale.

Overt Act No. 24:  On June 28, 2023, defendant CASTRO met with
CI-2 in Azusa, California to conduct a series of firearms sales.

Overt Act No. 25:  On June 28, 2023, after traveling to a
location in West Covina, California, defendant CASTRO obtained a
Polymer 80 PF940SC, 9mm caliber handgun, with a Glock 27 slide
attached, bearing serial number CACB084 on the slide, from defendant
GORDIAN-PADILLA and provided it to CI-2.

Overt Act No. 26:  On June 28, 2023, defendant CASTRO directed
CI-2 to a residence in La Puente, California to facilitate a firearm
sale.

Overt Act No. 27:  On June 28, 2023, defendant CASTRO told CI-2
that he had a "Glock with a switch on it," referring to a Glock,
model 19x, 9x19mm caliber pistol, bearing serial number BGWS391, with
a machinegun conversion device attached.

Overt Act No. 28:  On June 28, 2023, at a residence in La
Puente, California, defendants CASTRO and CARMONA sold CI-2 one I.O.
Inc., model Sporter, 7.62x39 caliber rifle, bearing serial number
024470; one Glock, model 19x, 9x19mm caliber pistol, bearing serial
number BGWS391, with a machinegun conversion device secured to the

rear of the slide of the firearm; and one Glock, model 27 Gen 5, .40 caliber pistol, bearing serial number BXMU613.

Overt Act No. 29:   On June 28, 2023, in West Covina, California, defendants CASTRO and DOMINGUEZ sold CI-2 one HS Produkt, Springfield Armory, model XDS, .45 ACP caliber pistol, bearing serial number BA572766.

Overt Act No. 30:   On June 28, 2023, in Azusa, California, defendant CASTRO and a co-conspirator sold CI-2 one Companhia Brasileira de Cartuchos (CBC), Mossberg International, model 715T, .22 caliber rifle, bearing serial number EVB4581056.

**August 2, 2023: Sale of Three Firearms**

Overt Act No. 31:   On August 1, 2023, via Instagram, defendant V. SANCHEZ informed CI-1 of firearms defendant V. SANCHEZ had available to sell.

Overt Act No. 32:   On August 2, 2023, defendants V. SANCHEZ and FAUSTO met with CI-1 in Pomona, California, and sold CI-1 one Smith & Wesson, model 60, .38 Special caliber revolver, bearing serial number BAB6611, and one L.A.R. Manufacturing Inc., Bushmaster Firearms, model XM 15-E2S, .223-5.56mm caliber rifle, bearing serial number L150443.

Overt Act No. 33:   On August 2, 2023, in La Verne, California, defendant V. SANCHEZ and a co-conspirator sold one privately manufactured rifle to CI-1.

**August 8, 2023: Sale of Five Firearms**

Overt Act No. 34:   On August 7, 2023, via text message, defendant CASTRO discussed firearms that he had available to sell with CI-2.

<u>Overt Act No. 35:</u>  On August 8, 2023, defendant CASTRO met with a co-conspirator who directed CI-2 to go to a residence in Bell Gardens, California.

<u>Overt Act No. 36:</u>  On August 8, 2023, defendant CASTRO and a co-conspirator retrieved a privately made handgun, bearing no serial number (commonly referred to as a "ghost gun"), from a residence in Bell Gardens, California, and sold it to CI-2.

<u>Overt Act No. 37:</u>  On August 8, 2023, defendants CASTRO and CARMONA met with CI-2 in La Puente, California, and sold CI-2 one German Sport Guns, American Tactical (ATI), model GSG-MP40, 9x19mm caliber pistol, bearing serial number A917005; one Beretta, model 92FS, 9mm Parabellum caliber pistol, bearing serial number BER169445Z; one Glock, model 19 Gen 4, 9x19mm caliber pistol, bearing serial BEHX808; and one Glock, model 42, .380 Auto caliber pistol, bearing serial number AGFF879.

**August 10, 2023: Sale of One Firearm**

<u>Overt Act No. 38:</u>  On August 9, 2023, via Instagram, defendant ORNELAS advertised a firearm for sale.

<u>Overt Act No. 39:</u>  On August 10, 2023, via Instagram, defendant ORNELAS coordinated the sale of a firearm to CI-2.

<u>Overt Act No. 40:</u>  On August 10, 2023, defendants ORNELAS and CASTRO met with CI-2 in a parking lot in West Covina, California, to conduct the sale of the firearm.

<u>Overt Act No. 41:</u>  On August 10, 2023, in the parking lot in West Covina, California, defendant ORNELAS sold CI-2 one Glock, model 48, 9x19mm caliber pistol, bearing serial number BPZF973.

**August 23, 2023: Sale of One Firearm**

1    <u>Overt Act No. 42:</u>  On August 23, 2023, defendant FAUSTO

2   coordinated the sale of a firearm with CI-1.

3    <u>Overt Act No. 43:</u>  On August 23, 2023, in Pomona, California,

4   defendant FAUSTO sold CI-1 one Glock, model 19, 9x19mm caliber

5   pistol, with an obliterated serial number.

6   **September 6, 2023: Sale of Four Firearms**

7    <u>Overt Act No. 44:</u>  Between September 1, 2023, and September 6,

8   2023, defendant CASTRO coordinated the sale of firearms with CI-2.

9    <u>Overt Act No. 45:</u>  On September 6, 2023, defendants CASTRO,

10   GORDIAN-PADILLA, and DOMINGUEZ met with CI-2 and CI-3 in Irwindale,

11   California, to sell them firearms.

12    <u>Overt Act No. 46:</u>  On September 6, 2023, in Irwindale,

13   California, defendants CASTRO and DOMINGUEZ sold CI-2 one Rock

14   Island, .45 caliber handgun, bearing serial number RIA2477435; and

15   one Rock Island, .45 caliber handgun, bearing serial number

16   RIA2477443.

17    <u>Overt Act No. 47:</u>  On September 6, 2023, in Irwindale,

18   California, defendants CASTRO and GORDIAN-PADILLA sold CI-3 one

19   Springfield Armory, model XD, 9mm handgun, bearing serial number

20   HD933112; and one Glock, model 43, 9mm handgun, bearing serial number

21   AEXV209.

22   **November 15, 2023: Sale of One Firearm**

23    <u>Overt Act No. 48:</u>  On November 13, 2023, defendant V. SANCHEZ

24   contacted CI-1 and advertised firearms for sale.

25    <u>Overt Act No. 49:</u>  On November 15, 2023, in Pomona, California,

26   defendant V. SANCHEZ met with CI-1 and sold CI-1 one Tri Town

27   Precision Plastics Smith & Wesson, model M&P 45, .45 Auto caliber

28   pistol, bearing serial number MRL83288.

35

**November 20, 2023: Sale of Two Firearms**

Overt Act No. 50:   On November 19, 2023, via Instagram, defendant V. SANCHEZ coordinated the sale of firearms with CI-1.

Overt Act No. 51:   On November 20, 2023, in Pomona, California, defendants CASTRO, DOMINGUEZ, and F. RODRIGUEZ met with CI-1.

Overt Act No. 52:   On November 20, 2023, in Pomona, California, defendants CASTRO and F. RODRIGUEZ sold one CAI, Century Arms, model Draco, 7.62x39mm caliber pistol, bearing serial number USD000358, to CI-1.

Overt Act No. 53:   On November 20, 2023, in Pomona, California, defendants CASTRO and DOMINGUEZ sold one Sturm, Ruger, and Co., model Security-9, 9mm Luger caliber pistol, bearing serial number 384-29482, to CI-1.

**December 6, 2023: Sale of Five Firearms**

Overt Act No. 54:   On November 20, 2023, after defendants CASTRO and DOMINGUEZ had sold two firearms to CI-1, defendant CASTRO sent a text message to CI-1 with photographs of another firearm he could obtain to sell to CI-1.

Overt Act No. 55:   On December 6, 2023, in Pomona, California, defendant CASTRO sold CI-1 one Glock, model 41 Gen4, .45 auto caliber pistol, bearing serial number XZA547; one Glock, model 23 Gen4, .40 caliber pistol, bearing serial number PUC374; one Glock, model 19 Gen4, 9x19mm caliber pistol, bearing serial number VRM156; one Glock, model 17 Gen4, 9x19mm caliber pistol, bearing serial number AHPL084; and one Tri Town Precision Plastics Smith & Wesson, model SD40VE, .40 caliber pistol, bearing serial number HEY9822.

**January 11, 2024: Sale of Two Firearms**

36

<u>Overt Act No. 56:</u>  On January 3, 2024, via Instagram, defendant V. SANCHEZ coordinated the sale of firearms with CI-1.

<u>Overt Act No. 57:</u>  On January 11, 2024, in Pomona, California, defendants L. SANCHEZ and F. RODRIGUEZ sold CI-1 one LW Schneider Inc., Smith & Wesson, model M&P 15, 5.56 NATO caliber rifle, bearing serial number SV12747; and one privately manufactured AR-style rifle, bearing no serial number (commonly referred to as a "ghost gun").

**February 13, 2024: Sale of Two Firearms**

<u>Overt Act No. 58:</u>  Between February 7, 2024, and February 12, 2024, via text messages and phone calls, defendant V. SANCHEZ coordinated the sale of firearms with CI-1.

<u>Overt Act No. 59:</u>  On February 13, 2024, in Pomona, California, defendant L. SANCHEZ sold CI-1 one Sturm, Ruger, and Co., model EC9s, 9mm Luger caliber pistol, with an obliterated serial number; and one Kel-Tec CNC, model P3AT, .380 Auto caliber pistol, bearing serial number H9X21.

**February 13, 2024: Sale of One Firearm**

<u>Overt Act No. 60:</u>  On February 13, 2024, via Instagram, defendant GORDIAN-PADILLA coordinated the sale of one firearm with a person he believed to be a customer, but who was in fact a confidential informant working for law enforcement ("CI-5").

<u>Overt Act No. 61:</u>  On February 13, 2024, in San Dimas, California, defendant GORDIAN-PADILLA sold CI-5 one Sturm, Ruger, and Co., model SR40, .40 caliber pistol, bearing serial number 34402933, for $1,000.

**February 28, 2024: Sale of a Short-Barreled Rifle and Another Firearm**

<u>Overt Act No. 62:</u>  On February 26, 2024, via text message, defendant V. SANCHEZ coordinated the sale of firearms to CI-1.

Overt Act No. 63:    On February 28, 2024, in Pomona, California, defendant L. SANCHEZ sold CI-1 one Arsenal JSCo, model SLR95, 7.62x39 caliber rifle, bearing serial number KO372089; and one privately manufactured short-barreled rifle, bearing no serial number (commonly referred to as a "ghost gun").

**February 28, 2024: Sale of One Firearm**

Overt Act No. 64:    On February 27, 2024, via Instagram, defendant GORDIAN-PADILLA agreed to sell one firearm to CI-5.

Overt Act No. 65:    On February 28, 2024, defendant GORDIAN-PADILLA met with CI-5 in San Dimas, California, and sold CI-5 one Sarsilmaz (SAR ARMS), model SARB6P, 9mm caliber pistol, bearing serial number T1102-12E00338.

**November 4, 2024: Sale of One Firearm**

Overt Act No. 66:    On November 1, 2024, via text message, defendant V. SANCHEZ coordinated with CI-4 regarding the sale of a firearm.

Overt Act No. 67:    On November 4, 2024, in San Bernardino, California, a co-conspirator sold CI-4 one HS Produkt, Springfield Armory, model XD9 Sub-Compact, 9x19mm caliber pistol, bearing serial number US802577.

COUNT SEVEN

[18 U.S.C. §§ 922(a)(1)(A), 2(a)]

[DEFENDANTS V. SANCHEZ, CASTRO, L. SANCHEZ, FAUSTO, GORDIAN-PADILLA, DOMINGUEZ, and CARMONA]

35.  The Grand Jury realleges paragraphs 1 through 13 and 29 of this Indictment here.

36.  Beginning on or before March 22, 2023, and continuing through on or about November 4, 2024, in Los Angeles County, within the Central District of California, and elsewhere, defendants V. SANCHEZ, CASTRO, L. SANCHEZ, FAUSTO, GORDIAN-PADILLA, DOMINGUEZ, and CARMONA, each aiding and abetting the others, not being licensed as importers, manufacturers, or dealers of firearms, willfully engaged in the business of dealing in firearms, specifically, the sales of the following firearms, on or about the following dates:

| DATE | DEFENDANT(S) | FIREARM(S) |
|---|---|---|
| March 22, 2023 | V. SANCHEZ and FAUSTO | Privately manufactured firearm, bearing no serial number (commonly referred to as a "ghost gun") |
| April 5, 2023 | V. SANCHEZ | SMI-MA Khar Arms, model K40, .40 caliber pistol, bearing serial number DF4340 |
| April 5, 2023 | V. SANCHEZ | Polymer 80, model PF940C, 9mm caliber handgun, bearing no serial number (commonly referred to as a "ghost gun") |
| June 7, 2023 | CASTRO | HS Produkt, Springfield Armory, model XD-9, 9x19mm caliber pistol, bearing serial number XD887601 |

| DATE | DEFENDANT(S) | FIREARM(S) |
|---|---|---|
| June 13, 2023 | CASTRO and L. SANCHEZ | (1) A.C.P., Mitchell, model 9108 BL, 12-gauge shotgun, bearing serial number 691801; (2) Privately manufactured short-barreled rifle, bearing no serial number (commonly referred to as a "ghost gun"); and (3) LW Schneider Inc., Springfield Armory, model Saint, multi-caliber rifle, bearing serial number ST166939 |
| June 13, 2023 | CASTRO and L. SANCHEZ | Ruger, model AR-556, 5.56 caliber rifle, bearing serial number 857-49363 |
| June 28, 2023 | CASTRO and GORDIAN-PADILLA | Polymer 80, model PF940SC, 9mm caliber handgun, with a Glock 27 slide attached, bearing serial number CACB084 on the slide |
| June 28, 2023 | CASTRO and DOMINGUEZ | HS Produkt, Springfield Armory, model XDS, .45 ACP caliber pistol, bearing serial number BA572766 |
| June 28, 2023 | CASTRO and CARMONA | (1) I.O. Inc., model Sporter, 7.62x39 caliber rifle, bearing serial number 024470; (2) Glock, model 19x, 9x19mm caliber pistol, bearing serial number BGWS391, with a machinegun conversion device secured to the rear of the slide of the firearm; and (3) Glock, model 27 Gen 5, .40 caliber pistol, bearing serial number BXMU613 |
| June 28, 2023 | CASTRO | Companhia Brasileira de Cartuchos (CBC), Mossberg International, model 715T, .22 caliber rifle, bearing serial number EVB4581056 |
| August 2, 2023 | V. SANCHEZ | Privately manufactured rifle, bearing no serial number (commonly referred to as a "ghost gun") |

| DATE | DEFENDANT(S) | FIREARM(S) |
|---|---|---|
| August 2, 2023 | V. SANCHEZ and FAUSTO | (1) L.A.R. Manufacturing Inc., Bushmaster Firearms, model XM 15-E2S, .223-5.56mm caliber rifle, bearing serial number L150443; and<br>(2) Smith & Wesson, model 60, .38 Special caliber revolver, bearing serial number BAB6611 |
| August 8, 2023 | CASTRO | Privately manufactured handgun, bearing no serial number (commonly referred to as a "ghost gun") |
| August 8, 2023 | CASTRO and CARMONA | (1) German Sport Guns, American Tactical (ATI), model GSG-MP40, 9x19mm caliber pistol, bearing serial number A917005;<br>(2) Beretta, model 92FS, 9mm Parabellum caliber pistol, bearing serial number BER169445Z;<br>(3) Glock, model 19 Gen 4, 9x19mm caliber pistol, bearing serial BEHX808; and<br>(4) Glock, model 42, .380 Auto caliber pistol, bearing serial number AGFF879 |
| August 10, 2023 | CASTRO | Glock, model 48, 9x19mm caliber pistol, bearing serial number BPZF973 |
| August 23, 2023 | FAUSTO | Glock, model 19, 9x19mm caliber pistol, with an obliterated serial number |
| September 6, 2023 | CASTRO and DOMINGUEZ | (1) Armscor, Rock Island Armory, model M1911 A1-FS, .45 ACP caliber pistol, bearing serial number RIA2477435; and<br>(2) Armscor, Rock Island Armory, model M1911 A1-FS, .45 ACP caliber pistol, bearing serial number RIA2477443 |
| September 6, 2023 | CASTRO and GORDIAN-PADILLA | (1) HS Produkt, Springfield Armory, model XD9, 9x19mm caliber pistol, bearing serial number HD933112; and<br>(2) Glock, model 43, 9x19mm caliber pistol, bearing serial number AEXV209 |

| DATE | DEFENDANT(S) | FIREARM(S) |
|---|---|---|
| November 15, 2023 | V. SANCHEZ | Tri Town Precision Plastics Smith & Wesson, model M&P 45, .45 Auto caliber pistol, bearing serial number MRL8328 |
| November 20, 2023 | V. SANCHEZ, CASTRO, and DOMINGUEZ | (1) CAI, Century Arms Model Draco, 7.62x39mm caliber pistol, bearing serial number USD000358; and<br>(2) Sturm, Ruger, and Co., model Security-9, 9mm Luger caliber pistol, bearing serial number 384-29482 |
| December 6, 2023 | CASTRO | (1) Glock, model 41 Gen4, .45 auto caliber pistol, bearing serial number XZA547;<br>(2) Glock, model 23 Gen4, .40 caliber pistol, bearing serial number PUC374;<br>(3) Glock, model 19 Gen4, 9x19mm caliber pistol, bearing serial number VRM156;<br>(4) Glock, model 17 Gen4, 9x19mm caliber pistol, bearing serial number AHPL084; and<br>(5) Tri Town Precision Plastics Smith & Wesson, model SD40VE, .40 caliber pistol, bearing serial number HEY9822 |
| January 11, 2024 | V. SANCHEZ and L. SANCHEZ | (1) LW Schneider Inc., Smith & Wesson, model M&P 15, 5.56 NATO caliber rifle, bearing serial number SV12747; and<br>(2) Privately manufactured AR-style rifle, bearing no serial number (commonly referred to as a "ghost gun") |
| February 13, 2024 | V. SANCHEZ and L. SANCHEZ | (1) Sturm, Ruger, and Co., model EC9s, 9mm Luger caliber pistol, with an obliterated serial number; and<br>(2) Kel-Tec CNC, model P3AT, .380 Auto caliber pistol, bearing serial number H9X21 |
| February 13, 2024 | GORDIAN-PADILLA | Sturm, Ruger, and Co., model SR40, .40 caliber pistol, bearing serial number 34402933 |

| DATE | DEFENDANT(S) | FIREARM(S) |
|---|---|---|
| February 28, 2024 | V. SANCHEZ and L. SANCHEZ | (1) Arsenal JSCo, model SLR95, 7.62x39 caliber rifle, bearing serial number KO372089; and<br>(2) Privately manufactured short-barreled rifle, bearing no serial number (commonly referred to as a "ghost gun") |
| February 28, 2024 | GORDIAN-PADILLA | Sarsilmaz (SAR ARMS), model SARB6P, 9mm caliber pistol, bearing serial number T1102-12E00338 |
| November 4, 2024 | V. SANCHEZ | HS Produkt, Springfield Armory, model XD9 Sub-Compact, 9x19mm caliber pistol, bearing serial number US802577 |

COUNTS EIGHT THROUGH FIFTEEN

[18 U.S.C. § 922(g)(1)]

[DEFENDANT V. SANCHEZ]

37. The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

38. On or about the following dates, in Los Angeles County, within the Central District of California, defendant V. SANCHEZ knowingly possessed the following firearms, each in and affecting interstate and foreign commerce:

| COUNT | DATE | FIREARM(S) |
|---|---|---|
| EIGHT | April 5, 2023 | SMI-MA Kahr Arms, model K40, .40 caliber pistol, bearing serial number DF4340 |
| NINE | August 2, 2023 | (1) L.A.R. Manufacturing Inc., Bushmaster Firearms, model XM 15-E2S, .223-5.56mm caliber rifle, bearing serial number L150443; and (2) Smith & Wesson, model 60, .38 Special caliber revolver, bearing serial number BAB6611 |
| TEN | November 15, 2023 | Tri Town Precision Plastics Smith & Wesson, model M&P 45, .45 Auto caliber pistol, bearing serial number MRL8328 |
| ELEVEN | November 20, 2023 | (1) CAI, Century Arms, model Draco, 7.62x39mm caliber pistol, bearing serial number USD000358; and (2) Sturm, Ruger, and Co., model Security-9, 9mm Luger caliber pistol, bearing serial number 384-29482 |
| TWELVE | January 11, 2024 | LW Schneider Inc., Smith & Wesson, model M&P 15, 5.56 NATO caliber rifle, bearing serial number SV12747 |
| THIRTEEN | February 13, 2024 | Kel-Tec CNC, model P3AT, .380 Auto caliber pistol, bearing serial number H9X21 |

44

| COUNT | DATE | FIREARM(S) |
|-------|------|------------|
| FOURTEEN | February 28, 2024 | Arsenal JSCo, model SLR95, 7.62x39 caliber rifle, bearing serial number KO372089 |
| FIFTEEN | November 4, 2024 | HS Produkt, Springfield Armory, model XD9 Sub-Compact, 9x19mm caliber pistol, bearing serial number US802577 |

39.  Defendant V. SANCHEZ possessed such firearms knowing that he had previously been convicted of a felony crime punishable by a term of imprisonment exceeding one year, namely, Possession for Sale of a Controlled Substance, in violation of California Health and Safety Code Section 11351, in the Superior Court of the State of California, County of San Bernardino, Case Number FWV21002982, on or about September 16, 2021.

COUNT SIXTEEN

[18 U.S.C. § 922(g)(1)]

[DEFENDANT FAUSTO]

40.   The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

41.   On or about August 2, 2023, in Los Angeles County, within the Central District of California, defendant FAUSTO knowingly possessed one L.A.R. Manufacturing Inc., Bushmaster Firearms, model XM 15-E2S, .223-5.56mm caliber rifle, bearing serial number L150443, and one Smith & Wesson, model 60, .38 Special caliber revolver, bearing serial number BAB6611, each in and affecting interstate and foreign commerce.

42.   Defendant FAUSTO possessed such firearms knowing that he had previously been convicted of a felony crime punishable by a term of imprisonment exceeding one year, namely, Robbery in the Second Degree, in violation of California Penal Code Section 211, in the Superior Court of the State of California, County of Los Angeles, Case Number KA086405, on or about April 2, 2009.

1                      COUNTS SEVENTEEN THROUGH TWENTY

2                        [18 U.S.C. § 922(g)(1)]

3                        [DEFENDANT GORDIAN-PADILLA]

4      43.  The Grand Jury realleges paragraphs 1 through 13 of this

5  Indictment here.

6      44.  On or about the following dates, in Los Angeles County,

7  within the Central District of California, defendant GORDIAN-PADILLA

8  knowingly possessed the following firearms, each in and affecting

9  interstate and foreign commerce:

| COUNT | DATE | FIREARM(S) |
|-------|------|------------|
| SEVENTEEN | June 28, 2023 | Polymer 80, model PF940SC, 9mm caliber handgun, with a Glock 27 slide attached, bearing serial number CACB084 on the slide |
| EIGHTEEN | September 6, 2023 | (1) HS Produkt, Springfield Armory, model XD9, 9x19mm caliber pistol, bearing serial number HD933112; and (2) Glock, model 43, 9x19mm caliber pistol, bearing serial number AEXV209 |
| NINETEEN | February 13, 2024 | Sturm, Ruger, and Co., model SR40, .40 caliber pistol, bearing serial number 344-02933 |
| TWENTY | February 28, 2024 | Sarsilmaz (SAR ARMS), model SARB6P, 9mm caliber pistol, bearing serial number T1102-12E00338 |

22     45.  Defendant GORDIAN-PADILLA possessed such firearms knowing

23  that he had previously been convicted of at least one of the

24  following felony crimes, each punishable by a term of imprisonment

25  exceeding one year:

26          a.   Carrying a Concealed Weapon in a Vehicle, in violation

27  of California Penal Code Section 25400(a)(1), in the Superior Court

of the State of California, County of Los Angeles, Case Number KA123759, on or about March 9, 2020; and

b.    Reckless Evading, in violation of California Vehicle Code Section 2800.2, in the Superior Court of the State of California, County of Los Angeles, Case Number KA125972, on or about May 25, 2021.

COUNT TWENTY-ONE

[21 U.S.C. § 841(a)(1), (b)(1)(C); 18 U.S.C. § 2(a)]

[DEFENDANTS V. SANCHEZ and CASTRO]

46.   The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

47.   On or about March 15, 2023, in Los Angeles County, within the Central District of California, defendants V. SANCHEZ and CASTRO, each aiding and abetting the other, knowingly and intentionally distributed cocaine, a Schedule II narcotic drug controlled substance.

COUNT TWENTY-TWO

[21 U.S.C. § 841(a)(1), (b)(1)(C); 18 U.S.C. § 2(a)]

[DEFENDANTS V. SANCHEZ and FAUSTO]

48.  The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

49.  On or about March 22, 2023, in Los Angeles County, within the Central District of California, defendants V. SANCHEZ and FAUSTO, each aiding and abetting the other, knowingly and intentionally distributed N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT TWENTY-THREE

[21 U.S.C. § 841(a)(1), (b)(1)(C); 18 U.S.C. § 2(a)]

[DEFENDANTS V. SANCHEZ and FAUSTO]

50.   The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

51.   On or about March 22, 2023, in Los Angeles County, within the Central District of California, defendants V. SANCHEZ and FAUSTO, each aiding and abetting the other, knowingly and intentionally distributed methamphetamine, a Schedule II controlled substance.

COUNT TWENTY-FOUR

[21 U.S.C. § 841(a)(1), (b)(1)(B)(vi)]

[DEFENDANT V. SANCHEZ]

52.  The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

53.  On or about April 5, 2023, in Los Angeles County, within the Central District of California, defendant V. SANCHEZ knowingly and intentionally distributed at least 40 grams, that is, approximately 105.25 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT TWENTY-FIVE

[21 U.S.C. § 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT V. SANCHEZ]

54.  The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

55.  On or about April 5, 2023, in Los Angeles County, within the Central District of California, defendant V. SANCHEZ knowingly and intentionally distributed at least 50 grams, that is, approximately 441 grams, of methamphetamine, a Schedule II controlled substance.

COUNT TWENTY-SIX

[21 U.S.C. § 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT V. SANCHEZ]

56.  The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

57.  On or about April 5, 2023, in Los Angeles County, within the Central District of California, defendant V. SANCHEZ knowingly and intentionally distributed at least 50 grams, that is, approximately 113.4 grams, of methamphetamine, a Schedule II controlled substance.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                        COUNT TWENTY-SEVEN

      [21 U.S.C. § 841(a)(1), (b)(1)(B)(vi); 18 U.S.C. § 2(a)]

                  [DEFENDANTS V. SANCHEZ and FAUSTO]

      58.  The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

      59.  On or about June 1, 2023, in Los Angeles County, within the Central District of California, defendants V. SANCHEZ and FAUSTO, each aiding and abetting the other, knowingly and intentionally distributed at least 40 grams, that is, approximately 53.13 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT TWENTY-EIGHT

[21 U.S.C. § 841(a)(1), (b)(1)(C); 18 U.S.C. § 2(a)]

[DEFENDANT CASTRO]

60.  The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

61.  On or about June 7, 2023, in Los Angeles County, within the Central District of California, defendant CASTRO, and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly and intentionally distributed a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

1

COUNT TWENTY-NINE

2

[21 U.S.C. § 841(a)(1), (b)(1)(C)]

3

[DEFENDANT CASTRO]

4      62.  The Grand Jury realleges paragraphs 1 through 13 of this

5  Indictment here.

6      63.  On or about June 13, 2023, in Los Angeles County, within

7  the Central District of California, defendant CASTRO knowingly and

8  intentionally distributed a mixture and substance containing a

9  detectable amount of cocaine, a Schedule II narcotic drug controlled

10  substance.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT THIRTY

[21 U.S.C. § 841(a)(1), (b)(1)(C)]

[DEFENDANT KANG]

64.  The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

65.  On or about June 28, 2023, in Los Angeles County, within the Central District of California, defendant KANG knowingly and intentionally distributed cocaine, a Schedule II narcotic drug controlled substance.

COUNT THIRTY-ONE

[21 U.S.C. § 841(a)(1), (b)(1)(C)]

[DEFENDANT CASTRO]

66.  The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

67.  On or about June 28, 2023, in Los Angeles County, within the Central District of California, defendant CASTRO knowingly and intentionally distributed cocaine, a Schedule II narcotic drug controlled substance.

59

COUNT THIRTY-TWO

[21 U.S.C. § 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT FAUSTO]

68.   The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

69.   On or about August 23, 2023, in Los Angeles County, within the Central District of California, defendant FAUSTO knowingly and intentionally distributed at least 50 grams, that is, approximately 55.6 grams, of methamphetamine, a Schedule II controlled substance.

COUNT THIRTY-THREE

[21 U.S.C. § 841(a)(1), (b)(1)(C)]

[DEFENDANT CASTRO]

70.   The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

71.   On or about September 6, 2023, in Los Angeles County, within the Central District of California, defendant CASTRO knowingly and intentionally distributed cocaine, a Schedule II narcotic drug controlled substance.

COUNT THIRTY-FOUR

[21 U.S.C. § 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT V. SANCHEZ]

72.  The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

73.  On or about October 12, 2023, in Los Angeles County, within the Central District of California, defendant V. SANCHEZ knowingly and intentionally distributed at least 50 grams, that is, approximately 420.4 grams, of methamphetamine, a Schedule II controlled substance.

1

                              COUNT THIRTY-FIVE

2          [21 U.S.C. § 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

3                       [DEFENDANTS CASTRO and DOMINGUEZ]

4          74.  The Grand Jury realleges paragraphs 1 through 13 of this

5   Indictment here.

6          75.  On or about December 6, 2023, in Los Angeles County, within

7   the Central District of California, defendants CASTRO and DOMINGUEZ,

8   each aiding and abetting the other, knowingly and intentionally

9   distributed at least 50 grams, that is, approximately 445.5 grams, of

10  methamphetamine, a Schedule II controlled substance.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT THIRTY-SIX

[21 U.S.C. § 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

[DEFENDANTS V. SANCHEZ, L. SANCHEZ, and F. RODRIGUEZ]

76.  The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

77.  On or about January 11, 2024, in Los Angeles County, within the Central District of California, defendants V. SANCHEZ, L. SANCHEZ, and F. RODRIGUEZ, each aiding and abetting the others, knowingly and intentionally distributed at least 50 grams, that is, approximately 450.4 grams, of methamphetamine, a Schedule II controlled substance.

                         COUNT THIRTY-SEVEN

      [21 U.S.C. § 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

                  [DEFENDANTS V. SANCHEZ and L. SANCHEZ]

      78.  The Grand Jury realleges paragraphs 1 through 13 of this
Indictment here.

      79.  On or about February 13, 2024, in Los Angeles County,
within the Central District of California, defendants V. SANCHEZ and
L. SANCHEZ, each aiding and abetting the other, knowingly and
intentionally distributed at least 50 grams, that is, approximately
855.8 grams, of methamphetamine, a Schedule II controlled substance.

COUNT THIRTY-EIGHT

[21 U.S.C. § 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

[DEFENDANTS V. SANCHEZ and L. SANCHEZ]

80.  The Grand Jury realleges paragraphs 1 through 13 of this
Indictment here.

81.  On or about February 28, 2024, in Los Angeles County,
within the Central District of California, defendants V. SANCHEZ and
L. SANCHEZ, each aiding and abetting the other, knowingly and
intentionally distributed at least 50 grams, that is, approximately
431.1 grams, of methamphetamine, a Schedule II controlled substance.

COUNT THIRTY-NINE

[21 U.S.C. § 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

[DEFENDANTS V. SANCHEZ and L. SANCHEZ]

82.  The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

83.  On or about April 10, 2024, in Los Angeles County, within the Central District of California, defendants V. SANCHEZ and L. SANCHEZ, each aiding and abetting the other, knowingly and intentionally distributed at least 50 grams, that is, approximately 439.4 grams, of methamphetamine, a Schedule II controlled substance.

COUNT FORTY

[21 U.S.C. § 841(a)(1), (b)(1)(A)(vi); 18 U.S.C. § 2(a)]

[DEFENDANTS V. SANCHEZ and MOTAMEDI]

84.   The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

85.   On or about September 16, 2024, in Orange County, within the Central District of California, defendants V. SANCHEZ and MOTAMEDI, each aiding and abetting the other, knowingly and intentionally distributed at least 100 grams, that is, approximately 106.07 grams, of a mixture and substance containing a detectable amount of carfentanil, an analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT FORTY-ONE

[21 U.S.C. § 841(a)(1), (b)(1)(B)(vi); 18 U.S.C. § 2(a)]

[DEFENDANTS J. RODRIGUEZ and E. RODRIGUEZ]

86.  The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

87.  On or about September 18, 2024, in San Bernardino County, within the Central District of California, defendants J. RODRIGUEZ and E. RODRIGUEZ, each aiding and abetting the other, knowingly and intentionally possessed with intent to distribute at least 40 grams, that is, approximately 2,000 M30 pills containing 230 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT FORTY-TWO

[18 U.S.C. §§ 924(c)(1)(A)(i), 2(a)]

[DEFENDANTS J. RODRIGUEZ and E. RODRIGUEZ]

88.  The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

89.  On or about September 18, 2024, in San Bernardino County, within the Central District of California, defendants J. RODRIGUEZ and E. RODRIGUEZ, each aiding and abetting the other, knowingly possessed firearms, namely, a Derya Arms, model VR-60, 12-gauge shotgun, bearing serial number R115632, and a Smith & Wesson, model M&P Shield, 9mm caliber handgun, bearing serial number HXN5237, in furtherance of a drug trafficking crime, namely, possession with intent to distribute fentanyl, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B)(vi), as charged in Count Forty-One of this Indictment.

COUNT FORTY-THREE

[21 U.S.C. § 841(a)(1), (b)(1)(B)(vi)]

[DEFENDANT ESTRADA-FROST]

90.  The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

91.  On or about November 5, 2024, in Los Angeles County, within the Central District of California, defendant ESTRADA-FROST knowingly and intentionally possessed with intent to distribute at least 10 grams, that is, approximately 99 grams, of a mixture and substance containing a detectable amount of carfentanil, an analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT FORTY-FOUR

[21 U.S.C. § 841(a)(1), (b)(1)(C)]

[DEFENDANT ESTRADA-FROST]

92.   The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

93.   On or about November 5, 2024, in Los Angeles County, within the Central District of California, defendant ESTRADA-FROST knowingly and intentionally possessed with intent to distribute approximately 11 grams of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT FORTY-FIVE

[18 U.S.C. § 924(c)(1)(A)(i)]

[DEFENDANT ESTRADA-FROST]

94.   The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

95.   On or about November 5, 2024, in Los Angeles County, within the Central District of California, defendant ESTRADA-FROST knowingly possessed firearms, namely, a privately manufactured AR-style handgun, bearing no serial number (commonly referred to as a "ghost gun"), and a Glock, model 19, 9mm caliber handgun, bearing serial number CBNH325, in furtherance of the following drug trafficking crimes:

a.   Possession with intent to distribute carfentanil, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B)(vi), as charged in Count Forty-Three of this Indictment; and

b.   Possession with intent to distribute N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C), as charged in Count Forty-Four of this Indictment.

COUNT FORTY-SIX

[21 U.S.C. § 841(a)(1), (b)(1)(B)(vi)]

[DEFENDANT V. SANCHEZ]

96.   The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

97.   On or about December 10, 2024, in Los Angeles County, within the Central District of California, defendant V. SANCHEZ knowingly and intentionally distributed at least 40 grams, that is, approximately 50.6 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT FORTY-SEVEN

[21 U.S.C. § 860]

[DEFENDANT V. SANCHEZ]

98.  The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

99.  On or about December 10, 2024, in Los Angeles County, within the Central District of California, defendant V. SANCHEZ knowingly and intentionally distributed at least 40 grams, that is, approximately 50.6 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B)(vi), within 1,000 feet of the real property comprising a public elementary school, that is, Roosevelt Elementary School, located at 401 Walnut Grove Avenue, San Gabriel, California 91776.

                          COUNT FORTY-EIGHT

        [21 U.S.C. § 841(a)(1), (b)(1)(B)(vi); 18 U.S.C. § 2(a)]

                    [DEFENDANTS V. SANCHEZ and FAUSTO]

     100. The Grand Jury realleges paragraphs 1 through 13 of this
Indictment here.

     101. On or about January 2, 2025, in Los Angeles County, within
the Central District of California, defendants V. SANCHEZ and FAUSTO,
each aiding and abetting the other, knowingly and intentionally
distributed at least 40 grams, that is, approximately 98.98 grams of
a mixture and substance containing a detectable amount of N-phenyl-N-
[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a
Schedule II narcotic drug controlled substance.

COUNT FORTY-NINE

[21 U.S.C. § 860; 18 U.S.C. § 2(a)]

[DEFENDANTS V. SANCHEZ and FAUSTO]

102. The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

103. On or about January 2, 2025, in Los Angeles County, within the Central District of California, defendants V. SANCHEZ and FAUSTO, each aiding and abetting the other, knowingly and intentionally distributed at least 40 grams, that is, approximately 98.98 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(B)(vi), within 1,000 feet of the real property comprising a public elementary school, that is, Roosevelt Elementary School, located at 401 Walnut Grove Avenue, San Gabriel, California 91776.

1                                       COUNT FIFTY

2                          [21 U.S.C. § 841(a)(1), (b)(1)(C)]

3                                  [DEFENDANT ORNELAS]

4          104. The Grand Jury realleges paragraphs 1 through 13 of this

5    Indictment here.

6          105. On or about March 19, 2025, in San Bernardino County,

7    within the Central District of California, defendant ORNELAS

8    knowingly and intentionally possessed with intent to distribute 3,4-

9    Methylenedioxymethamphetamine ("MDMA" or "ecstasy"), a schedule I

10   controlled substance.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT FIFTY-ONE

[21 U.S.C. § 841(a)(1), (b)(1)(C)]

[DEFENDANT ORNELAS]

106. The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

107. On or about March 19, 2025, in San Bernardino County, within the Central District of California, defendant ORNELAS knowingly and intentionally possessed with intent to distribute cocaine, a Schedule II narcotic drug controlled substance.

79

COUNT FIFTY-TWO

[18 U.S.C. § 924(c)(1)(A)(i)]

[DEFENDANT ORNELAS]

108. The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

109. On or about March 19, 2025, in San Bernardino County, within the Central District of California, defendant ORNELAS knowingly possessed a firearm, namely, a Glock, model 17, 9mm caliber handgun bearing serial number BFMW447, in furtherance of the following drug trafficking crimes:

a.    Possession with intent to distribute 3,4-Methylenedioxymethamphetamine ("MDMA" or "ecstasy"), in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C), as charged in Count Fifty of this Indictment; and

b.    Possession with intent to distribute cocaine, in violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(C), as charged in Count Fifty-One of this Indictment.

COUNT FIFTY-THREE

[21 U.S.C. § 841(a)(1), (b)(1)(B)(vi)]

[DEFENDANT LOPEZ]

110. The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

111. On or about April 17, 2025, in Los Angeles County, within the Central District of California, defendant LOPEZ knowingly and intentionally distributed at least 40 grams, that is, approximately 99.7 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT FIFTY-FOUR

[18 U.S.C. §§ 922(o)(1), 2(a)]

[DEFENDANTS CASTRO and CARMONA]

112. The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

113. On or about June 28, 2023, in Los Angeles County, within the Central District of California, defendants CASTRO and CARMONA, and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly possessed a machinegun, as defined in Title 18, United States Code, Section 921(a)(24), and Title 26, United States Code, Section 5845(b), that defendants CASTRO and CARMONA knew to be a machinegun, namely, a machinegun conversion device (also known as an "auto sear") that was designed and intended solely and exclusively for use in converting a weapon into a machinegun, and which was attached to a Glock, model 19x, 9mm handgun, bearing serial number BGWS391.

                            COUNT FIFTY-FIVE

                    [18 U.S.C. §§ 933(a)(1), 2(a)]

                   [DEFENDANTS CASTRO and CARMONA]

     114. The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

     115. On or about June 28, 2023, in Los Angeles County, within the Central District of California, defendants CASTRO and CARMONA, and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly shipped, transported, transferred, caused to be transported, and otherwise disposed of a firearm to another person, namely, a machinegun conversion device (also known as an "auto sear") that was designed and intended solely and exclusively for use in converting a weapon into a machinegun, and which was attached to a Glock, model 19x, 9mm handgun, bearing serial number BGWS391, in and affecting interstate commerce, knowing and having reasonable cause to believe that the use, carrying, and possession of the firearm by the recipient would constitute a felony, namely, Possession of a Machinegun, in violation of 18 U.S.C. § 922(o)(1).

COUNT FIFTY-SIX

[26 U.S.C. § 5861(d); 18 U.S.C. § 2(a)]

[DEFENDANTS CASTRO, L. SANCHEZ, PONCE, and MEJIA]

116. The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

117. On or about June 13, 2023, in Los Angeles County, within the Central District of California, defendants CASTRO, L. SANCHEZ, PONCE, and MEJIA, each aiding and abetting the others, knowingly possessed a firearm, namely, a rifle bearing no serial number, with a barrel of less than 16 inches in length, which defendants CASTRO, L. SANCHEZ, PONCE, and MEJIA knew to be a firearm and a short-barreled rifle, as defined in Title 26, United States Code, Section 5845(a)(3) and (c), and which had not been registered to defendants CASTRO, L. SANCHEZ, PONCE, or MEJIA in the National Firearms Registration and Transfer Record, as required by Title 26, United States Code, Chapter 53.

COUNT FIFTY-SEVEN

[26 U.S.C. § 5861(d)]

[DEFENDANT V. SANCHEZ]

118. The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

119. On or about August 2, 2023, in Los Angeles County, within the Central District of California, defendant V. SANCHEZ knowingly possessed a firearm, namely, a rifle bearing no serial number, with a barrel of less than 16 inches in length, which defendant V. SANCHEZ knew to be a firearm and a short-barreled rifle, as defined in Title 26, United States Code, Section 5845(a)(3) and (c), and which had not been registered to defendant V. SANCHEZ in the National Firearms Registration and Transfer Record, as required by Title 26, United States Code, Chapter 53.

COUNT FIFTY-EIGHT

[26 U.S.C. § 5861(d); 18 U.S.C. § 2(a)]

[DEFENDANTS V. SANCHEZ and L. SANCHEZ]

120. The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

121. On or about February 28, 2024, in Los Angeles County, within the Central District of California, defendants V. SANCHEZ and L. SANCHEZ, each aiding and abetting the other, knowingly possessed a firearm, namely, a rifle bearing no serial number, with a barrel of less than 16 inches in length, which defendants V. SANCHEZ and L. SANCHEZ knew to be a firearm and a short-barreled rifle, as defined in Title 26, United States Code, Section 5845(a)(3) and (c), and which had not been registered to defendants V. SANCHEZ or L. SANCHEZ in the National Firearms Registration and Transfer Record, as required by Title 26, United States Code, Chapter 53.

COUNT FIFTY-NINE

[26 U.S.C. § 5861(i); 18 U.S.C. § 2(a)]

[DEFENDANTS V. SANCHEZ and L. SANCHEZ]

122. The Grand Jury realleges paragraphs 1 through 13 of this Indictment here.

123. On or about February 28, 2024, in Los Angeles County, within the Central District of California, defendants V. SANCHEZ and L. SANCHEZ, and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly possessed a firearm, namely, a rifle bearing no serial number, with a barrel of less than 16 inches in length, which defendants V. SANCHEZ and L. SANCHEZ knew to be a firearm and a short-barreled rifle, as defined in Title 26, United States Code, Section 5845(a)(3) and (c), and which was not identified by a serial number, as required by Title 26, United States Code, Chapter 53.

87

1          FORFEITURE ALLEGATION ONE

2      [18 U.S.C. §§ 981(a)(1)(C), 924(d); 28 U.S.C. § 2461(c)]

3      1.    Pursuant to Federal Rule of Criminal Procedure 32.2, notice

4  is hereby given that the United States of America will seek

5  forfeiture as part of any sentence, pursuant to Title 18, United

6  States Code, Sections 981(a)(1)(C), 924(d), and Title 28, United

7  States Code, Section 2461(c), in the event of any defendant's

8  conviction of the offenses set forth in any of Counts One through

9  Four of this Indictment.

10      2.    Any defendant so convicted shall forfeit to the United

11  States of America the following:

12          (a)   All right, title, and interest in any and all

13  property, real or personal, constituting or derived from, any

14  proceeds traceable to the offenses;

15          (b)   All right, title, and interest in any firearm or

16  ammunition involved in or used in any such offense; and

17          (c)   To the extent such property is not available for

18  forfeiture, a sum of money equal to the total value of the property

19  described in subparagraphs (a) and (b).

20      3.    Pursuant to Title 21, United States Code, Section 853(p),

21  as incorporated by Title 28, United States Code, Section 2461(c), any

22  defendant so convicted shall forfeit substitute property, up to the

23  total value of the property described in the preceding paragraph if,

24  as the result of any act or omission of said defendant, the property

25  described in the preceding paragraph, or any portion thereof (a)

26  cannot be located upon the exercise of due diligence; (b) has been

27  transferred, sold to or deposited with a third party; (c) has been

28  placed beyond the jurisdiction of the court; (d) has been

88

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[21 U.S.C. § 853; 18 U.S.C. § 924(d); 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal
Procedure, notice is hereby given that the United States of America
will seek forfeiture as part of any sentence, pursuant to Title 21,
United States Code, Section 853, Title 18, United States Code,
Section 924(d), and Title 28, United States Code, Section 2461(c), in
the event of any defendant's conviction of the offenses set forth in
any of Counts Five, Twenty-One through Forty-One, Forty-Three through
Forty-Four, Forty-Six through Fifty-One, or Fifty-Three of this
Indictment.

2.    Any defendant so convicted shall forfeit to the United
States of America the following:

(a)  All right, title, and interest in any and all
property, real or personal, constituting or derived from, any
proceeds traceable to the offenses;

(b)  All right, title, and interest in any firearm or
ammunition involved in or used in any such offense; and

(c)  To the extent such property is not available for
forfeiture, a sum of money equal to the total value of the property
described in subparagraphs (a) and (b).

3.    Pursuant to Title 21, United States Code, Section 853(p),
as incorporated by Title 28, United States Code, Section 2461(c), any
defendant so convicted shall forfeit substitute property, up to the
value of the property described in the preceding paragraph if, as the
result of any act or omission of said defendant, the property
described in the preceding paragraph or any portion thereof (a)

90

cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

1

                        FORFEITURE ALLEGATION THREE

2

                [18 U.S.C. § 924(d)(1); 28 U.S.C. § 2461(c)]

3       1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal

4   Procedure, notice is hereby given that the United States of America

5   will seek forfeiture as part of any sentence, pursuant to Title 18,

6   United States Code, Section 924(d)(1), and Title 28, United States

7   Code, Section 2461(c), in the event of any defendant's conviction of

8   the offenses set forth in any of Counts Six through Twenty, Forty-

9   Two, Forty-Five, Fifty-Two, Fifty-Four, or Fifty-Five of this

10  Indictment.

11      2.    Any defendant so convicted shall forfeit to the United

12  States of America the following:

13          (a) All right, title, and interest in any firearm or

14  ammunition involved in or used in any such offense; and

15          (b) To the extent such property is not available for

16  forfeiture, a sum of money equal to the total value of the property

17  described in subparagraph (a).

18      3.    Pursuant to Title 21, United States Code, Section 853(p),

19  as incorporated by Title 28, United States Code, Section 2461(c), any

20  defendant so convicted shall forfeit substitute property, up to the

21  total value of the property described in the preceding paragraph if,

22  as the result of any act or omission of said defendant, the property

23  described in the preceding paragraph, or any portion thereof: (a)

24  cannot be located upon the exercise of due diligence; (b) has been

25  transferred, sold to or deposited with a third party; (c) has been

26  placed beyond the jurisdiction of the court; (d) has been

27  substantially diminished in value; or (e) has been commingled with

28  other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION FOUR

[26 U.S.C. §§ 5872, 7302; and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 26, United States Code, Sections 5872 and 7302, and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts Fifty-Six through Fifty-Nine of this Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)    All right, title, and interest in any firearm involved in any such offense; and

(b)    All right, title, and interest in any and all property used or intended to be used to commit any such offense; and

(c)    To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a) or (b).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with

93

1    other property that cannot be divided without difficulty.

2

3

4                                              A TRUE BILL

5

6                                              /S/
                                               _____
7                                              Foreperson

8    TODD BLANCHE
     Deputy Attorney General
9
     BILAL A. ESSAYLI
10   First Assistant United States
     Attorney
11

12

13   ALEXANDER B. SCHWAB
     Assistant United States Attorney
14   Acting Chief, Criminal Division

15   KEVIN J. BUTLER
     Assistant United States Attorney
16   Acting Chief, Major Crimes Section

17   KENNETH R. CARBAJAL
     CLIFFORD D. MPARE
18   Assistant United States Attorneys
     Major Crimes Section
19

20

21

22

23

24

25

26

27

28